[Nos. F070141, F070169. Fifth Dist. Dec. 29, 2016.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LUIS MUNGUIA et al., Defendants and Appellants.

■■■■■■■■■■■■■■■■

Counsel

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant Jose Luis Munguia.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant Elissa Arambula.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine B. Chatman and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

KANE, J.—

## INTRODUCTION

Codefendants Elissa Arambula, Jose Luis Munguia and Anesia Lucia Ribeiro were charged by amended information with first degree burglary with the intent to commit larceny or any felony, in violation of Penal Code section 460, subdivision (a).[1] As to each defendant, the amended information alleged the offense was a serious felony under section 1192.7, subdivision (c)(18), and a violent felony within the meaning of section 667.5, subdivision (c)(21). As to Munguia, the amended information also alleged he committed the offense while out on bail within the meaning of section 12022.1; had a prior serious felony conviction (§ 667, subd. (a)(1)), and a prior serious and/or violent felony conviction pursuant to the three strikes law (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)); and he served four prior prison terms (§ 667.5, subd. (b)).

Arambula and Munguia were tried together.[2] A jury convicted them of first degree burglary and found true the violent felony enhancement allegation (§ 667.5, subd. (c)(21)).[3] In a bifurcated proceeding as to Munguia, the trial court found true the on-bail enhancement (§ 12022.1), the prior serious felony

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

[2] Ribeiro failed to appear for her trial.

[3] Section 667.5, subdivision (c)(21), defines as a violent felony "[a]ny burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." We refer to this enhancement herein as "occupied burglary." (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 987 [45 Cal.Rptr.3d 126].)

conviction (§ 667, subd. (a)(1)), the prior strike conviction (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)), and the prior prison terms (§ 667.5, subd. (b)).

At the time of Arambula's arrest for first degree burglary, she was on probation for vehicle theft and the trial court revoked probation. After the jury convicted Arambula of first degree burglary, the court found her in violation of probation and ruled probation would remain revoked. Arambula was sentenced to a determinate prison term of six years (upper term) for the burglary conviction, and various fines and fees were imposed and restitution was ordered. She was sentenced to three years (upper term) for the probation violation, to be served concurrently.

Munguia was sentenced to a determinate prison term of two years eight months (one-third of the midterm, doubled), plus two years for the on-bail enhancement and one year for each of the three prior prison terms, and various fines and fees were imposed and restitution was ordered. His sentence was ordered to run consecutive to the 17-year sentence he received in a separate case, for a total determinate prison term of 24 years 8 months.[4]

On appeal, Arambula argues her conviction is not supported by sufficient evidence on the issues of intent to commit theft and burglary of an inhabited dwelling, and the jury's true finding on occupied burglary enhancement (§ 667.5, subd. (c)(21)) is not supported by sufficient evidence. She seeks the reduction of her conviction from first degree burglary to second degree burglary and to have the occupied burglary enhancement stricken.

Munguia also argues there is insufficient evidence to support his conviction on the issue of burglary of an inhabited dwelling. Additionally, he argues that based on the plain language of section 667.5, subdivision (c)(21), the evidence is insufficient as a matter of law to support the occupied burglary enhancement and that the trial court committed error when it admitted evidence of his prior burglary conviction under Evidence Code sections 1101, subdivision (b), and 352, and committed instructional error as to the occupied burglary enhancement.[5] Munguia seeks reversal of his conviction for first degree burglary and to have the occupied burglary enhancement stricken.

---

[4] Munguia was separately convicted of residential robbery (§ 212.5, subd. (a)) and residential burglary (§ 460, subd. (a)) in Kern Superior Court case No. BF153374B. He was sentenced to 12 years for robbery, plus five years for the prior strike conviction (§ 667, subd. (a)), and 12 years for burglary, stayed (§ 654).

[5] Munguia also joins in Arambula's arguments to the extent they are of benefit to him. (Cal. Rules of Court, rule 8.200(a)(5).)

We find Arambula's and Munguia's first degree burglary convictions are supported by substantial evidence; the occupied burglary enhancement applies if there is a person other than an accomplice present at any time prior to the perpetrator's final departure from the residence; no prejudice resulted from the admission of Munguia's prior burglary conviction; and no instructional error was committed. We affirm the judgment.

## FACTUAL SUMMARY

In 2011, the Bakersfield house Salvador Tejeda owned and lived in with his family was damaged by a fire.[6] Tejeda and his family moved into a different house in Bakersfield and Tejeda, a general contractor, demolished their damaged home and began rebuilding it. After the fire, Tejeda's damaged house and his neighbors' houses were a target for thieves. Juanita Howard, who lived several houses away from Tejeda, began patrolling the neighborhood once in the evening before dark and once in the morning.

In May 2014, Tejeda's house was 95 percent complete and the only work left to be done was in the kitchen. Although there was no electricity to the house, there was running water and he had furniture worth approximately $100,000 stored in the kitchen and living room.[7] By then, Tejeda and his wife had separated but he intended to finish the house for his wife and children to live in. Tejeda did not keep clothes or toiletries in the house, but there were mattresses and a comforter inside. He testified that at the time of the burglary, he had been spending the night at the house every other day to every three days for months, due to the numerous break-in attempts, and he was continuing to stay there periodically.

On the latter point, Howard, who was a defense witness, testified she was aware of Tejeda staying overnight only one or two times. However, she also testified she was not "buddy buddies" with him and would not know if he stayed other times. Additionally, his car was not visible even the one or two times she knew he was staying overnight.

On May 4, 2014, Tejeda was at the house. After locking the windows and doors, he left at approximately 10:30 that night. The next morning, Howard saw the gate to Tejeda's property was down and she called him at approximately 8:00 a.m. to let him know. He drove to the house and saw a window had been forced open. He also noticed that while the deadbolt was locked, the door handle lock was not set. As he always locked both, he concluded someone had unlocked the door handle from the inside.

---

[6] Tejeda testified the fire damaged the attic and the entire roof. His neighbor, Juanita Howard, testified the house was destroyed by the fire and nothing was salvageable.

[7] Tejeda had a portable generator he used for electricity.

Tejeda entered the house and noticed the tools he had in the family room near the rear of the house, including a portable table saw, were missing. He then located the table saw and other tools in the living room, near the entrance to the house. He also noticed a small coffee table had been moved from the kitchen to the family room, the wall-to-wall carpet in one of the bedrooms had been pulled back from the walls, the cover over one of the leather sofas had been removed, and blueprints for the house and some miscellaneous items had been moved. Small tools had also been gathered from around the house and placed in a tool bag. Nothing was taken from the house, however.

As Tejeda was walking downstairs, he heard footsteps upstairs. He then exited the house, locked the doors and called the Bakersfield Police Department. As he was waiting outside for the police in front of the house, Howard arrived and watched the back of the property by the alleyway for him.

A vehicle drove up and Munguia, who was driving, got out, approached Tejeda and asked if Tejeda could let his friend, who had been left behind, out of the house. Tejeda said no and told Munguia the police had been called. Munguia started walking toward his vehicle looking worried. The police arrived and Munguia drove away. Tejeda pointed out Munguia's departing vehicle to the police, and Officer Juarez pulled it over several blocks away. Ribeiro was in the back seat.

Police entered Tejeda's house, announced themselves and began checking rooms. Arambula then called down and let police know she was upstairs. She came down the stairs and was detained without incident.

Two sets of footprints were located inside the house. The footprints appeared to have been left by Vans-style shoes and did not match the sandals Arambula was wearing. After being notified of the footprints, Officer Juarez checked Munguia's and Ribeiro's shoes; both were wearing Vans-style shoes. Juarez transported them back to the house, compared their shoes to the footprints found in the house, and determined the type and size matched Munguia's and Ribeiro's shoes.

Munguia told Officer Juarez that he drove Arambula and Ribeiro to the hospital around 2:30 a.m. Ribeiro was released a couple of hours later and they drove around for a while. He got tired and parked on Panorama Drive, where Tejeda's house is located. Munguia admitted Ribeiro entered Tejeda's house through the kitchen window and opened the door for him and Arambula.[8] He also said he saw Ribeiro and a male subject leave the house

---

[8] The window was not large but a smaller person could fit through it and Ribeiro was petite.

carrying tools. He said he did not know the male subject's name, though, and he could not provide any description of him to Officer Juarez.

## DISCUSSION

I. *Sufficiency of the Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Occupied Burglary Enhancement*

Arambula argues that the evidence is insufficient to support the jury's occupied burglary enhancement finding, and Munguia argues that under the plain language of the statute, the evidence is insufficient to support the enhancement as a matter of law. The premise underlying both parties' arguments is that the commission of burglary is complete upon entry and no one, other than an accomplice, was present at that time.

The People contend it is well recognized that a burglary continues after the time of entry with the intent to commit theft or another felony, and the burglary was ongoing when Tejeda entered the residence.

We review Arambula's and Munguia's challenges to the legal sufficiency of the undisputed evidence supporting the occupied burglary enhancement de novo.[11] (*People v. Perkins* (2016) 244 Cal.App.4th 129, 136 [197 Cal.Rptr.3d 743]; *People v. Harris* (2014) 224 Cal.App.4th 86, 89 [168 Cal.Rptr.3d 305]; *People v. Elder* (2014) 227 Cal.App.4th 411, 421 [174 Cal.Rptr.3d 192]; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 316, fn. 3 [51 Cal.Rptr.3d 678].)

### A. *Section 667.5, Subdivision (c)(21)*

Pursuant to section 667.5, subdivision (a): "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows:

---

*See footnote, *ante*, page 103.

[11] Citing *In re K.F.* (2009) 173 Cal.App.4th 655 [92 Cal.Rptr.3d 784], Arambula contends this claim was not forfeited on appeal by her trial counsel's failure to object because "[s]ufficiency of the evidence has always been viewed as a question necessarily and inherently raised in every contested trial of any issue of fact, and requiring no further steps by the aggrieved party to be preserved for appeal." (*Id.* at p. 660.) The People do not argue otherwise and we therefore assume without deciding that this claim was not forfeited. (See *People v. McCullough* (2013) 56 Cal.4th 589, 593 [155 Cal.Rptr.3d 365, 298 P.3d 860] ["neither forfeiture nor application of the forfeiture rule is automatic"]; see also *People v. Williams* (2013) 218 Cal.App.4th 1038, 1052–1053 [160 Cal.Rptr.3d 779] [reaching issues intertwined with statutory interpretation notwithstanding forfeiture objection because it "serves the interest of avoiding similar errors in future cases"].)

"(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition to and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior offense was one of the violent felonies specified in subdivision (c). However, no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

■ First degree burglary where a nonaccomplice third party is present was elevated to a violent felony within the meaning of section 667.5, subdivision (c), in 2000 as part of Proposition 21. (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1336 [66 Cal.Rptr.3d 738] (*Singleton*).) "Occupied burglary plainly presents a potential for violence and consequently merits enhanced punishment." (*Doe v. Saenz, supra,* 140 Cal.App.4th at p. 988; accord, *People v. Debouver* (2016) 1 Cal.App.5th 972, 982 [205 Cal.Rptr.3d 318]; accord, *People v. Harris, supra,* 224 Cal.App.4th at p. 91.) It "does not require the use or threat of force. Indeed, the crime does not require any contact between the defendant and the occupant. The mere presence of a nonaccomplice in the dwelling is sufficient. Further, knowledge that a dwelling is occupied is not an element of occupied burglary. Thus, a burglary may qualify as an occupied burglary under . . . section 667.5[, subdivision ](c)(21) even though the defendant had no contact with the occupant and thought no one was present in the home during the burglary." (*Doe v. Saenz, supra,* at p. 987.)

### B. *Meaning of "[D]uring the [C]ommission of the [B]urglary"*[12]

■ "The canons of statutory interpretation are well settled." (*Singleton, supra,* 155 Cal.App.4th at p. 1337.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196]; see *In re Gilbert R.* (2012) 211 Cal.App.4th 514, 519 [149 Cal.Rptr.3d 608].)

In this case, it is undisputed that Tejeda was not in the residence when Arambula, Munguia and Ribeiro entered it. He later entered the residence while Arambula was still upstairs. Munguia and Ribeiro returned to the residence shortly thereafter, where they encountered Tejeda waiting outside of the house for police to arrive.

Arambula's and Munguia's arguments focus on the completion of the crime in terms of the elements and the fact that Tejeda was not present in the

---

[12] Section 667.5, subdivision (c)(21).

residence at the time of entry. We agree that assuming the requisite intent is present, burglary is technically complete upon entry, as the elements of the offense have been satisfied. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042 [31 Cal.Rptr.2d 128, 874 P.2d 903] (*Montoya*); *People v. McEntire* (2016) 247 Cal.App.4th 484, 491 [202 Cal.Rptr.3d 128].) However, there is a distinction between the point at which the commission of a burglary is technically complete for the purpose of establishing criminal liability and the point at which the commission of a burglary is complete in that it has ended, and we reject Arambula's and Munguia's positions that the former controls with respect to the occupied burglary enhancement. (*Montoya, supra,* at pp. 1039–1043.)

In *Montoya,* the California Supreme Court addressed the duration of the crime of burglary. (*Montoya, supra,* 7 Cal.4th at p. 1038.) Although it did so in the context of aider and abettor liability rather than the occupied burglary enhancement, we find the analysis instructive. (*Ibid.*)

As in this case, the defendant in *Montoya* argued that because the crime of burglary is complete with respect to the elements of the offense upon entry, aider and abettor liability was dependent upon forming "the requisite intent to commit, encourage, or facilitate the offense *prior to or during entry by the perpetrator.*" (*Montoya, supra,* 7 Cal.4th at pp. 1039–1040.) The court had previously concluded in a robbery case that "the temporal threshold for establishing guilt—a fixed point in time at which all elements of the substantive offense are satisfied so that the offense itself may be considered to have been '*initially* committed' rather than simply attempted—is *not* synonymous with the 'commission' of that crime for the purpose of determining aider and abettor liability." (*Id.* at p. 1040.) Applying that analysis to the crime of burglary, the court determined "that the duration of a burglary . . . extends until the perpetrator's [final] departure from the structure." (*Id.* at pp. 1046–1047.)

In reaching this conclusion, the court considered the elements of burglary and the interests the law sought to protect, observing, "It is manifest that the increased danger to the personal safety of the occupant, and the increased risk of loss or damage to his or her property contemplated by the statutory proscription, do not terminate at the moment entry is accomplished, but rather continue while the perpetrator remains inside the structure. Certainly, an absent occupant could return at any moment and be faced with the danger created by the prior entry." (*Montoya, supra,* 7 Cal.4th at p. 1043.) "Moreover, as long as the perpetrator remains inside the structure, the increased danger to the personal safety of the occupant and the increased risk of loss or damage to his or her property continues, whether the perpetrator commits a felony or theft different from that intended at the time of entry, or even if no felony or theft is completed." (*Ibid.*)

The court drew additional support from comparing burglary to sex offenses, stating, "[T]he victim of a rape would not agree the offense was completed simply because all legal elements of the offense were established by the initial forcible penetration. [Citation.] Similarly, one who happens to be at home during a burglary and becomes aware not only of the entry itself, but of the burglar's continued presence, would not agree the offense was completed once the entry was accomplished, but rather would conclude the burglary ceased only when the burglar departed from the structure and the danger was past. One happening to arrive home after the burglar's entry but while he or she still is present in the residence would reach the same conclusion. It also is apparent that, even if the occupant is not present, the risk to property would continue during the entire period the burglar remains in the structure and is not diminished simply because the entry itself has been accomplished." (*Montoya, supra,* 7 Cal.4th at p. 1045, fn. omitted.)

The considerations underlying the court's conclusion in *Montoya* apply with equal force to the occupied burglary enhancement, which by its plain language applies to the presence of a nonaccomplice *during the commission of a burglary.* Occupied burglary was elevated to a violent felony because of the recognized dangers inherent in burglarizing an occupied residence. The briefest of overlaps between entry and the presence of a nonaccomplice suffices for the enhancement (*People v. McEntire, supra,* 247 Cal.App.4th at p. 492; *People v. Garcia* (2004) 121 Cal.App.4th 271, 280–281 [16 Cal.Rptr.3d 833]), and it matters not whether a nonaccomplice is present at the time of entry or interrupts the burglary in progress; in either circumstance, the nonaccomplice is present during the commission of the burglary, thereby creating the very situation of danger at which the enhancement is directed.

Munguia urges us to focus on the plain language of the statute and we have done so. While criminal liability attached at the time of entry and Tejeda was not then present, Arambula had not yet departed the residence for the final time when Tejeda entered it.[13] He was, therefore, present "during the commission of the burglary" and the enhancement, by its plain language, applies.[14] (§ 667.5, subd. (c)(21).)

---

[13] Munguia returned to the house in a vehicle and asked if Tejeda would let his friend out who had been left behind. Although Munguia does not argue otherwise, we note this evidence is sufficient to support a reasonable inference that Munguia had not departed the residence for the final time. (*Montoya, supra,* 7 Cal.4th at pp. 1046–1047.)

[14] Although we do not find reliance on dictionary definitions necessary here, given Munguia's stated view of the ordinary, commonplace meaning of "commission," we observe that Black's Law Dictionary (9th ed. 2009) at page 306 defines "commission" as "[t]he act of doing or perpetrating (as a crime)." (See *Ross v. Blake* (2016) 578 U.S. ___, ___ [195 L.Ed.2d 117, 136 S.Ct. 1850, 1858–1859] [considering ordinary meaning of statutory language by reference to dictionaries]; see *People v. Castillolopez* (2016) 63 Cal.4th 322, 327 [202 Cal.Rptr.3d 703, 371 P.3d 216] [same]; see also *People v. Casarez* (2012) 203 Cal.App.4th 1173, 1185 [138

■ The *Singleton* decision, which is cited by all parties, interpreted the meaning of "present in the residence" under section 667.5, subdivision (c)(21). The Court of Appeal found that "[s]ection 667.5, subdivision (c)(21) is plain on its face, and it requires a person, other than an accomplice, be '*present in the residence* during the commission of the burglary.' (Italics added.) The plain meaning of 'present in the residence' is that a person, other than the burglar or an accomplice, has crossed the threshold or otherwise passed within the outer walls of the house, apartment, or other dwelling place being burglarized." (*Singleton, supra*, 155 Cal.App.4th at p. 1337.)

■ Our decision here presents no departure from any principles articulated by the Court of Appeal in *Singleton*. The focus in that case was the presence of a nonaccomplice *in* the residence, however, and the court held the tenant's presence outside of the apartment in an exterior common hallway was not presence *in* the residence as required under the statute. (*Singleton, supra*, 155 Cal.App.4th at pp. 1337–1338; but see *People v. Debouver, supra*, 1 Cal.App.5th at pp. 981–982 [enhancement applied where apartment manager caught the defendant burglarizing vehicles in secured garage that shared roof with and was integrated part of apartment complex].) There is no question Tejeda was *in* the residence prior to the completion of the burglary, and on the issue presented here, *Singleton* is inapposite.

Our conclusion also draws support from the decision in *People v. Alvarado* (2001) 87 Cal.App.4th 178 [104 Cal.Rptr.2d 624] (*Alvarado*), cited by the People. In that case, the Court of Appeal considered the defendant's substantial evidence challenge to the jury's finding he committed rape " 'during the commission of a burglary' " within the meaning of section 667.61, subdivision (e)(2) (the "One Strike" law) (*Alvarado, supra*, at pp. 183, 185), and held "that the phrase 'during the commission of a burglary' includes the period of time that a burglar remains on the premises after entry and extends until the burglar has reached a place of temporary safety" (*id.* at p. 183).

Although *Alvarado* concerned rape during the commission of a burglary, as Arambula points out, it nonetheless addressed the statutory meaning of " 'during the commission of a burglary' " in response to the defendant's argument that "under section 667.61[, subdivision ](e)(2), a rape 'during the commission of a burglary' does not include a rape after the burglary has been

Cal.Rptr.3d 178] [same].) Webster's New World Dictionary (2d college ed. 1982) at page 285 defines "commission" as "the act of committing or doing; perpetration, as of a crime." Reliance on the ordinary, commonplace meaning of commission offers no support for the view that "commission" as contemplated by section 667.5, subdivision (c)(21), equates to "the temporal threshold for establishing guilt" relevant to determining criminal liability. (*Montoya, supra*, 7 Cal.4th at p. 1040.) Arambula was clearly still engaged in "the act of committing or doing" the burglary when Tejeda entered the residence. (Webster's New World Dict., *supra*, at p. 285.)

*initially* committed." (*Alvarado, supra*, 87 Cal.App.4th at p. 185.) The issue in *Alvarado* and the issue here share the same completion of the crime argument directed at the same statutory phrase, and both statutes are intended to enhance the punishment for certain crimes based on recognition of the increased danger, or potential danger, to victims of residential burglary. (*People v. Debouver, supra*, 1 Cal.App.5th at p. 982; *People v. Harris, supra*, 224 Cal.App.4th at p. 91; *Doe v. Saenz, supra*, 140 Cal.App.4th at p. 988; *Alvarado, supra*, at pp. 186–187.)

We are not persuaded by Arambula's contention that the analysis in *Alvarado* has no application here and we agree with the court in *Alvarado*, which stated: "We find [the] defendant's technical view of 'during the commission of a burglary' to be unreasonably narrow and believe it would substantially frustrate the purpose of [the statute]."[15] (*Alvarado, supra*, 87 Cal.App.4th at p. 187.)

Accordingly, we find no merit to Arambula's and Munguia's arguments that because Tejeda was not present in the residence at the time of entry, he was not present during the commission of the burglary.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Levy, Acting P. J., and Detjen, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 29, 2017, S239758.

---

[15] The People's citations to *People v. Elder, supra*, 227 Cal.App.4th at page 423 and *People v. Walls* (1978) 85 Cal.App.3d 447 at pages 452–453 [149 Cal.Rptr. 460] also support our conclusion that application of section 667.5, subdivision (c)(21), is not limited to circumstances where the nonaccomplice is present in the residence at the time of entry and Arambula's criticism of those authorities is equally unpersuasive.

*See footnote, *ante*, page 103.